UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WAEL FARASHI,<br>*Petitioner*<br><br>v.<br><br>WARDEN, SOUTH TEXAS ICE PROCESSING CENTER; AND ICE FIELD OFFICE DIRECTOR MICHAEL VERGARA,<br>*Respondents* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.  SA-25-CA-00956-XR |

## ORDER ON PETITION FOR HABEAS CORPUS

On this date, the Court considered Wael Farashi's Petition for a Writ of Habeas Corpus (ECF No. 1) and the Federal Respondents' response (ECF No. 7). After careful consideration, the petition is **DENIED**.

### BACKGROUND

Petitioner Wael Farashi is a native and citizen of Syria. ECF No. 1 ¶ 40. In 2024, he fled his home country due to fear of persecution as a member of the Druze ethnic religious community. *Id.* He entered the United States without inspection, was detained, and placed in expedited removal proceedings under 8 U.S.C. § 1225(b). ECF No. 7-1, Pena Decl. ¶ 5.[1]

In October 2024, after an asylum officer found Petitioner had established a credible fear of persecution or torture, the United States Citizenship and Immigration Services ("USCIS") issued a Notice to Appear ("NTA"), charging him as inadmissible for being present in the United States without being admitted or paroled and not having valid entry documents under 8 U.S.C. §§ 1182(a)(6)(i), (a)(7)(i). *Id.* ¶ 6.

---

[1] There is disagreement in the briefing about when Petitioner entered the United States. Petitioner asserts that he has been detained since July 2024. *See* ECF No. 1 ¶ 40. The Government, on the other hand, asserts that Petitioner entered without inspection in California in September 2024. *See* ECF No. 7-1, Pena Decl. ¶ 4.

On February 24, 2025, Petitioner appeared at his final removal hearing, and the Immigration Judge denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture and ordered him removed to Syria. ECF No. 1 ¶; ECF No. 7-1, Pena Decl. ¶ 7. Petitioner reserved appeal but did not file a timely appeal with the Board of Immigration Appeals. ECF No. 7-1, Pena Decl. ¶ 7.

Petitioner asserts that, since his final removal order was issued in February 2025, "no meaningful efforts have been undertaken by the government to effect his removal" and that "he remains in detention with no foreseeable prospect of release or removal," in violation of his statutory and constitutional rights. ECF No. 1 ¶ 40.

The Government presents a different version of events in its response, supported by the declaration of a Celestina Pena, a Supervisory Detention and Deportation Officer for U.S. Immigration and Customs Enforcement ("ICE") in the San Antonio, Texas Field Office of Enforcement and Removal Operations ("ERO"). *See* ECF No. 7-1, Pena Decl. In her declaration, Pena describes the Government's efforts thus far to remove the Petitioner to Syria:

- On March 8, 2025, ERO submitted a travel document request ("TDR") to the government of Syria. *Id.* ¶ 8. The Syrian government approved Petitioner's travel document in June 2025, but unescorted removals to Syria were unavailable as the airspace was closed. *Id.* ¶ 9.

- In June and July 2025, ERO served Petitioner Warnings for Failure to Depart (Forms I-229). *Id.* ¶ 10. In July 2025, he was notified that ICE had decided to continue his detention, as ICE had reason to believe there was a significant likelihood that his removal would occur in the reasonably foreseeable future and because he was a flight risk. *Id.* ¶ 11.

- In September 2025, ERO secured a new travel document from the Syrian government after Petitioner's first document expired and scheduled a removal flight for September 30, 2025. *Id.* ¶¶ 12–13. On the date of the scheduled removal flight, Petitioner refused to board the flight via commercial airline at the San Antonio airport and was returned to detention. *Id.* ¶ 14. Three days later, Petitioner filed a motion to reopen and an emergency motion for stay of removal with the Immigration Court. *Id.* ¶ 15. Both motions were denied. *Id.* ¶ 16.

- On October 29, 2025, ERO submitted another TDR request to the government of Syria because the second document expired. *Id.* ¶ 17.

Plaintiff does not dispute any of the factual assertions in the Government's response. Instead, he insists removal is not foreseeable because (1) there is no diplomatic coordination between the United States and Syria, (2) he does not possess a travel document, and (3) "the United States has not flown a single deportation flight to Syria in over a decade, and there are no publicly disclosed plans or infrastructure in place to resume operations." ECF No. 1 ¶¶ 47, 53, 48.

The Government counters that, given the Syrian government's issuance of two travel documents in connection with Petitioner's repatriation earlier this year, "[t]here is no indication that Syria will refuse to issue another travel document." ECF No. 7-1, Pena Decl. ¶ 18. The Government also points to public records showing 18 removals to Syria between 2022 and 2024. *See* ECF No. 7 at 10. Finally, the Government asserts that it will attempt removal on another commercial flight and, if Petitioner refuses to board the plane, ERO will refer his case for prosecution. ECF No. 7-1, Pena Decl. ¶ 18.

## LEGAL STANDARD

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## DISCUSSION

Petitioner argues that his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. "[T]he Government ordinarily secures [a noncitizen]'s removal during" the ninety days following a final order for the person to be removed. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1). During that ninety-day "removal period," the person subject to removal is typically detained. *Zadvydas*, 533 U.S. at 682. Beyond that point, the Government may in some situations continue detaining them for as long as is "reasonably necessary" to secure their removal. *Id.*; 8 U.S.C. § 1231(a)(6). But, under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699.

*Zadvydas* recognized a "presumptively" reasonable period of detention. 533 U.S. at 699 (emphasis added); *Villanueva*, 2025 WL 2774610, at *10 ("[T]he presumption of constitutionality during that six-month period is rebuttable."); *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) (collecting cases). It did so merely to "guide" lower court determinations of whether removal is reasonably foreseeable. *Munoz-Saucedo v. Pittman*, No. CV 25-2258 (CPO), 2025 WL 1750346, at *6 (D.N.J. June 24, 2025) (quoting *Zadvydas*, 533 at 700–01). *Zadvydas* unequivocally held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699–700.

A detained person who brings a *Zadvydas* claim *before* the presumptively reasonable six-month period must *prove* "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Medina*, 2025 WL 2306274, at *6 (quoting *Munoz-Saucedo*, 2025 WL 1750346, at *6). To make out a *Zadvydas* claim *after* the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in

4

the reasonably foreseeable future." *Id.* at 701. If he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

A mere lack "'lack of visible progress' in the removal process 'does not in and of itself meet [a petitioner's] burden of showing that there is no significant likelihood of removal.'" *Ali v. Johnson*, No. 3:21-CV-00050-M (BT), 2021 WL 4897659, at *2–3 (N.D. Tex. Sept. 24, 2021), *adopted*, 2021 WL 4893605 (N.D. Tex. Oct. 20, 2021) ("ERO has been actively engaged in the removal process here and followed up with Indian officials to obtain Ali's travel documents."). Indeed, "the reasonableness of detentions pending deportation cannot be divorced from the reality of the bureaucratic delays that almost always attend such removals." *Joseph K. v. Berg*, No. 18-CV-3125, 2019 WL 13254377, at *3 (D. Minn. Mar. 15, 2019) (quoting *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1367 (N.D. Ga. 2002)). "This is especially true [where] immigration authorities are attempting to negotiate removal to a country with which the United States has no formal diplomatic relations . . . . . Due deference is owed to immigration authorities as they navigate these diplomatic barriers." *Qasemi v. Kurzdorfer*, No. 25-CV-668-FPG, 2025 WL 2938607, at *5 (W.D.N.Y. Oct. 16, 2025) (citing *Zadvydas*, 533 U.S. at 700).

Moreover, "[a] noncitizen who is uncooperative in his removal cannot 'convincingly argue that there is no significant likelihood of removal.'" *Id.* (quoting *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019)); *see also Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003) (stating that a "non-cooperative detainee . . . cannot legitimately object to his continued detention when that very detention is caused by his own conduct"); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (summary order) ("[A] self-inflicted wound should not establish grounds for [a noncitizen's] *Zadvydas* claim.").

On the merits, the Court concludes that relief under *Zadvydas* is not yet warranted. Based on the facts available, this is not a case where "removal seems a remote possibility at best." *Zadvydas*, 533 U.S. at 690. Indeed, the Government is actively engaged in efforts to effect Petitioner's removal to Syria. And, given Syria's history of issuing travel documents to facilitate Petitioner's repatriation, there is no clear impediment to Petitioner's removal other than his refusal to board a flight to Syria. *Qasemi*, 2025 WL 2938607, at *5 (denying *Zadvydas* claim where the petitioner had been detained for over seventeen months but "much of that period [was] not fairly attributable to [the r]espondents.").

At present, the Court is satisfied that Respondents have made the necessary showing that there is a significant likelihood of removal in the reasonably foreseeable future. Therefore, the Petition must be denied, without prejudice to renewal in the future.

## CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **DENIED**. The Clerk is **DIRECTED** to **CLOSE** this case. A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 15th day of December, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE